UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO.:

JERMAINE NATTOO, on behalf of himself
and all other similarly situated,

      Plaintiff,

vs.

TPUSA-FHCS, INC., a Foreign Profit Corporation
(d/b/a) TELEPERFORMANCE USA

      Defendant.

_____/

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff, Jermaine Nattoo ("Nattoo" or "Plaintiff"), individually and on behalf of all similarly situated individuals, by and through his undersigned attorney, hereby brings this Collective and Class Action Complaint against Defendant, TPUSA-FHCS, INC, a Foreign Profit Corporation (d/b/a TELEPERFORMANCE USA) ("TPUSA" or "Defendant"), and alleges as follows:

## INTRODUCTION

1.    This is a Collective Action brought by Plaintiff, on behalf of himself and those similarly situated call center employees who were employed at Defendant's call centers, to recover for Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., and alleged contractual obligations (or unjust enrichment if no contract).

2.    Plaintiff, and those similarly situated, were subjected to Defendant's policy and practice of failing to compensate its call center employees for their necessary pre-shift and post-

lunch activities, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

3.      Further, Plaintiff, and those similarly situated, worked more than forty (40)  hours per workweek without receiving the proper overtime pay for all their overtime hours worked because Defendant failed to properly calculate the overtime pay rate to include non-discretionary bonuses.

4.      Plaintiff seeks a declaration that his rights, the rights of the putative FLSA Class, and the rights of the putative Rule 23 Classes were violated, and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre and post-judgment interest, and any other remedies to which they may be entitled.

5.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendant's call center, condemn their employer's non-payment of an employee's necessary pre-shift and post-shift activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A.

6.      Specifically, the DOL stated:

> "hours worked" includes ***all time*** an employee must be on duty, or ***on the employer's premises*** or at any other prescribed place of work, ***from the beginning of the first principal activity*** of the workday to the end of the last principal activity of the workday  An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails. *See id*. at 2 (emphasis added). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

## JURISTRICTION AND VENUE

7.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq.*

8.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

9.      This Court has supplemental jurisdiction over Plaintiffs' breach of contract or unjust enrichment claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

10.     Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

11.     Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

12.     This Court has personal jurisdiction over Defendant because TPUSA is Registered with the Florida Department of Corporations to conduct business within Florida, and they continue to conduct business within the State of Florida.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

## PARTIES

14.     Plaintiff is an individual who currently resides in Orlando, Florida[1].

15.     Plaintiff was employed by Defendant as an hourly Customer Service Representative("CSR") and was hired from on or around September 2019 through December 2019, in Defendant's Port St. Lucie, Florida call center.

16.     Plaintiff has executed his Consent to Become Party Plaintiff form, which is attached hereto, as Exhibit B.

17.     Upon information and belief, TPUSA hires call center employees, such as Plaintiff, to "be the eyes and ears for our team, fielding customer inquiries and finding innovative ways to respond . . . . [while] [h]andl[ing] and carefully respond[ing] to all inbound and outbound customer inquiries."

18.     TPUSA is a foreign profit corporation and is registered with the Florida Department of Corporations.

## GENERAL ALLEGATIONS

19.     Plaintiff was employed by Defendant as an hourly CSR from on or around September, 2019, until on or around December 2019, in Defendant's Port St. Lucie, Florida call center.

20.     Defendant assigned Plaintiff to answer inbound calls and make outbound customer calls for Defendant's client, UnitedHealthcare.

21.     Plaintiff's primary job duties included, but were not limited to, answering calls from customers, answering customer's questions regarding health insurance copays and benefits,

---

[1] During Plaintiff's employment with Defendant, Plaintiff lived in West Palm Beach, Florida and worked at Defendant's Port St. Lucie call center location.

as well as billing questions.  Plaintiff also took customer complaint calls and grievances as well as making outgoing calls on behalf of UnitedHealthcare's customers to schedule doctor's appointments.

22.     Plaintiff's hourly rate of pay was approximately $19.00 per hour. Additionally, Defendant's pay scheme incorporated the ability for Plaintiff to earn non-discretionary bonuses by meeting set quotas.

23.     At all times relevant to this Action, Plaintiff's compensation included a non-discretionary bonus of an additional $2.00 per hour to be applied to *all* hours Plaintiff worked during any week he met his set quotas.

24.     At all times relevant to this Action, Plaintiff's compensation included a non-discretionary bonus of an additional $5.00 per completed health insurance application submitted to Defendant.

25.     Upon information and belief, Defendant failed to compensate Plaintiff the additional $2.00 per hour to all hours Plaintiff worked during the workweeks he met his set quotas.

26.     Upon information and belief, Defendant failed to compensate Plaintiff the additional $5.00 per completed application submitted to Defendant.

27.     Throughout Plaintiff's employment with Defendant, he regularly worked at least forty (40) hours per workweek.

28.     Plaintiff was regularly required to work a substantial amount of time off-the-clock as part of his job duties as a call center employee.

29.     Plaintiff was never compensated for this time worked off-the-clock.

30.     29 C.F.R. § 553.221 provides that:

        Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed

workplace, as well as all other time during which the employee is suffered
or permitted to work for the employer. Such time includes all pre-shift and
post-shift activities which are an integral part of the employee's principal
activity or which are closely related to the performance of the principal
activity, such as attending roll call, writing up and completing tickets or
reports, and washing and re-racking fire hoses.

31.     29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of

a principal activity are those closely related activities which are indispensable to its performance."

32.     The FLSA subjects "every employer subject to any provisions of the Fair Labor

Standards Act" to maintain employee records. 29 C.F.R. § 516.1.

33.     An employer is mandated to maintain and preserve payroll or other records

containing, without limitation, the total hours worked by each employee each workday and the

total hours worked by each employee each workweek. *See id*. § 516.2.

34.     Upon information and belief, Defendant failed to establish, maintain and preserve

accurate timesheet and payroll records as required by the FLSA.

35.     When the employer fails to keep accurate records of the hours worked by its

employees, the rule in *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-88 (1946) is

controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate an employee
> has carried out his burden if he proves that he has in fact performed worked
> for which he was improperly compensated and if he produces sufficient
> evidence to show the amount and extent of that work as a matter of just and
> reasonable inference. The burden then shifts to the employer to come forward
> with evidence of the precise amount of work performed or with evidence of
> the precise amount of work performed or with evidence to negate the
> reasonableness of the inference to be drawn from the employee's evidence. If
> the employer fails to produce such evidence, the court may then award
> damages to the employee, even though the result be only approximate. *Id*.

36.     The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the Act." *Id.*

### A.    *Pre-Shift and Post-Lunch Off-the-Clock Work.*

37.     Plaintiff and all other similarly situated current and former hourly Customer Service Representatives ("CSRs") or held any similar positions(ex: Technical Support Agent, Bi-Lingual Customer Care Professional, Call Center Representative, Customer Support Specialist, Customer Service Agent) were tasked with providing Defendant's clients with customer service by use of Defendant's telephones, Defendant's computers, and the programs accessible from Defendant's computers.

38.     Defendant required Plaintiff and all other similarly situated current and former hourly CSRs to arrive at the call center before their scheduled shifts to boot up their computers and launch and log into necessary programs, servers, and applications to ensure they were ready to take their first call at their scheduled shift start. This pre-shift procedure regularly took between ten (10) minutes, to thirty (30) minutes, per shift, or even longer if technical issues arise. Only after this pre-shift procedure was completed were Plaintiff and all other similarly situated current and former hourly CSRs allowed to clock-in to Defendant's timekeeping system at the scheduled start of their shifts.

39.     Defendant required Plaintiff and all other similarly situated current and former hourly CSRs to log out of their necessary programs, servers, and applications and shut down their computer before taking their unpaid lunch break period.

40.     Defendant required Plaintiff and all other similarly situated current and former hourly CSRs to return to their desks before the scheduled end of their unpaid lunch period because Plaintiff and all other similarly situated current and former hourly CSRs were required undergo the same boot up procedure they followed at the beginning of their shifts. Plaintiff and all other similarly situated current and former hourly CSRs were required to return to their desks before the scheduled end of their unpaid lunch period to ensure they were ready to take their first call at their scheduled shift start. This boot up procedure post-lunch regularly took between ten (10) minutes, to thirty (30) minutes, or even longer if technical issues arise. Only after this process was completed were Plaintiffs allowed to clock-in to Defendant's timekeeping system and resume working.

41.     The pre-shift and post-lunch boot up procedures are integral and indispensable to the performance of Plaintiff and all other similarly situated current and former hourly CSRs' principal job duties.

42.     In order to perform their jobs as call center employees assisting Defendant's client via computer and telephone, Plaintiff and all other similarly situated current and former hourly CSRs needed to boot up their computers and launch and log into necessary programs, servers, and applications.

43.     The unpaid pre-shift and post-lunch off-the-clock work performed by Plaintiff and all other similarly situated current and former hourly CSRs directly benefits Defendant.

> **B.      Defendant's Policy and Practice of Off-the-Clock Work Defendant's and Defendant's Failure to Consider Non-Discretionary Bonuses in Calculating Overtime Premium Rates Willfully Violates the FLSA.**

44.     At all times relevant, Defendant suffered or permitted Plaintiff and all other similarly situated current and former hourly CSRs to routinely perform off-the-clock pre-shift

work by not allowing its employees to clock-in until after the pre-shift procedure was complete.

45.     At all times relevant, Defendant suffered or permitted Plaintiff and all other similarly situated current and former hourly CSRs to routinely perform post-lunch off-the-clock work by not allowing its employees to clock-in until after the post-lunch boot up procedure was complete.

46.     Defendant knew, or should have known, that its employees are required to be paid for all compensable time throughout the workweek. *See* 29 C.F.R. § 553.221; *id*. at § 790.8; *id*. at § 785.19(a).

47.     Despite this, Defendant failed to compensate Plaintiff and all other similarly situated current and former hourly CSRs for their off-the-clock pre-shift or post-lunch compensable work performed in any amount.

48.     Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, required them to compensate non-exempt employees who work in excess of forty (40) hours in a workweek at a rate of one and one-half (1.5) times their regular rate of pay—including the compensable off-the-clock pre- shift or post-lunch work performed.

49.     Despite this, Defendant failed to compensate Plaintiff and all other similarly situated current and former hourly CSRs for their off-the-clock pre-shift or post-lunch compensable work performed in excess of forty (40) hours in a workweek at one and one-half (1.5) times their regular rates of pay.

50.     At all times relevant to this Action, Plaintiff's compensation included a non-discretionary bonus of an additional $2.00 per hour to be applied to *all* hours Plaintiff worked during any workweek he met his set quotas.

51.     At all times relevant to this Action, Plaintiff's compensation included a non-

discretionary bonus of an additional $5.00 per completed health insurance application submitted to Defendant.

52.    Upon information and belief, Defendant failed to compensate Plaintiff the additional $5.00 per completed application submitted to Defendant.

53.    Upon information and belief, Defendant failed to compensate Plaintiff the additional $2.00 per hour to all hours Plaintiff worked during all the workweeks he met his set quota.

54.    Further, at all times relevant to this action, Defendant's pay scheme incorporated the ability for all other similarly situated current and former hourly CSRs to earn non-discretionary bonuses through meeting set quotas.

55.    Further, at all times relevant to this action, Defendant's pay scheme incorporated the ability for all other similarly situated current and former hourly CSRs to earn non-discretionary bonuses through submitting completed applications.

56.    Upon information and belief, Defendant routinely failed to compensate all other similarly situated current and former hourly CSRs the promised non-discretionary per hour bonus through meeting set quotas.

57.    Upon information and belief, Defendant routinely failed to compensate all other similarly situated current and former hourly CSRs the promised non-discretionary per hour bonus for submitting completed applications.

58.    Defendants knew, or should have known, that for purposes of the FLSA that an employee's "regular rate" of pay is determined by adding together the employee's total compensation—which includes the employee's hour rate and non-discretionary incentive payments, such as bonuses and/or commission, and dividing the number by the total number of

hours worked by the employee during the week in which the compensation was earned. *See* DOL Fact Sheet #56( c ), attached hereto as Exhibit C.

59.     Despite this, Defendants suffered and permitted Plaintiff, and others similarly situated, to work more than forty (40) hours per work week without receiving proper overtime pay by failing to include their non-discretionary incentive pay, such as non-discretionary bonuses, in calculating their regular rate of pay used to pay overtime compensation.

60.     In reckless disregard of the FLSA, Defendant adopted and then adhered to its policy, plan or practice of employing Plaintiff and all other similarly situated current and former hourly CSRs to perform pre-shift or post-lunch compensable work off-the-clock. Further, Defendant adopted and then adhered to its policy, plan or practice of failing to include their non-discretionary incentive pay in calculating their regular rate of pay used to pay overtime compensation. This illegal policy, plan or practice resulted in Plaintiff and all other similarly situated current and former hourly CSRs not being paid correctly for all overtime worked.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

61.     Plaintiff Jermaine Nattoo, brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on his own behalf and on behalf of:

> *All current and former hourly Customer Service Representative or other job titles who performed similar job duties who worked for TPUSA at any time in the last three (3) years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition as necessary.

62.     Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

63.     With respect to the claims set forth in this action, a collective action under the FLSA

is appropriate because, under 29 U.S.C. § 216(b), the call center employee described is "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendant's practices, policy, or plan of not paying their call center for their pre-shift or post-lunch compensable work performed in excess of forty (40) hours per workweek at an overtime premium of at least one and one- half (1.5) times their regular rates of pay and Defendant's practices, policy, or plan of failing to include their non-discretionary incentive pay in calculating their regular rate of pay used to pay overtime compensation); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

64.     Plaintiff estimates that the FLSA Collective, including both current and former call center employees over the relevant period, will include several thousand members who would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of collective class members should be readily available from a review of Defendant's personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

65.     Plaintiff shares the same interests as the FLSA Collective in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, to the factual assessment and legal standards lend themselves to a collective action.

## RULE 23 CLASS ACTION ALLEGATIONS

66.     Plaintiff, Jermaine Nattoo brings this action pursuant to Fed. R. Civ. P. 23 on behalf

of a putative Class defined to include:

> *All current and former Call Center Agent employees who worked for*
> *Teleperformance at any time in the last two (2) years.*

(hereinafter referred to as the "Nationwide Class"). Plaintiff reserves the right

to amend this definition as necessary.

67.     The members of the Nationwide Class are so numerous that joinder of all members

in the case would be impracticable, and the disposition of their claims as a Class will benefit the

parties and the Court. The precise number of Class members should be readily available from a

review of Defendant's personnel and payroll records.

68.     There is a well-defined community of interest among Nationwide Class members

and common questions of both law and fact predominate in the action over any questions affecting

individual members. These common legal and factual questions include, but are not limited to, the

following:

   a.   Whether Defendant offered to pay Plaintiff and the Nationwide Class certain

        rates per hour for each hour worked as call center employees;

   b.   Whether Plaintiff and the Nationwide Class accepted Defendant's

        offer by performing the essential functions of the job;

   c.   Whether Defendant breached the contract by failing to pay Plaintiff and

        the Nationwide Class for each and every hour worked, whether pre-

        shift or post- lunch;

   d.   Whether Defendant breached the contract by failing to pay

        Plaintiff and the Nationwide Class the proper overtime rate,

including the promised non- discretionary bonuses, as part of the

rate calculations; and,

e.  Whether Plaintiff and the Nationwide Class were damaged.

69.    Plaintiff's claims are typical of those of the Nationwide Class in that Plaintiff Jermaine Nattoo and all other members of the Nationwide Class suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Nationwide Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Nationwide Class members: whether the Defendant and the Nationwide Class members were employed under an oral contract to be paid for each and every hour worked by Defendant.

70.    Plaintiff Jermaine Nattoo will fully and adequately protect the interests of the Nationwide Class. Plaintiff retained national counsel who is qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Nationwide Class.

71.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Nationwide Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would be inefficient, cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the

efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

72.     This case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Nationwide Class within that group a separate opt-out notice pertaining to their rights under the common law. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## CAUSES OF ACTION

### COUNT I-VIOLATION OF THE FLSA
### 29 U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES

73.     Plaintiff re-alleges and incorporate all previous paragraphs herein and further alleges as follows.

74.     At all times relevant to this Action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

75.     Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

76.     Defendant is engaged in interstate commerce or in the production of goods for

commerce, as defined by the FLSA.

77.     At all times relevant to this Action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

78.     Plaintiff were either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

79.     Defendant's employees, including Plaintiff, engage in interstate commerce— including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

80.     The position of Customer Service Representative is not exempt from the FLSA.

81.     Defendant's other job titles performing similar Customer Service Representative job duties are not exempt from the FLSA.

82.     At all times relevant to this Action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. § 203(g).

83.     The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half (1.5) times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

84.     Upon information and belief, Defendant has corporate policies of not properly paying overtime pay for its hourly workers.

85.     Defendant violated the FLSA by suffering or permitting Plaintiff and all other similarly situated current and former hourly CSRs to routinely perform off-the-clock pre-shift and post-lunch work by not allowing its employees to clock-in until after the pre-shift and post-lunch procedures were complete.

86.     Defendant violated the FLSA by failing to pay Plaintiffs the federally mandated overtime premiums for Plaintiff and all other similarly situated current and former hourly CSRs' off- the-clock hours worked in excess of forty (40) hours per workweek.

87.     Defendant violated the FLSA by failing to include non-discretionary incentive pay in calculating Plaintiff and all other similarly situated current and former hourly CSRs' regular rate of pay used to pay overtime compensation.

88.     Defendant's violations of the FLSA were knowing and willful.

89.     By failing to compensate its hourly workers at a rate not less than one and one-half (1.5) times their regular rate of pay for all work performed in excess of forty (40) hours in a workweek, Defendant has violated the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated call former hourly CSRs or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to former hourly call center agents, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

90.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Class.

91.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

<u>**COUNT II**</u>
<u>**BREACH OF CONTRACT**</u>

92.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows:

93.     On or around September, 2019, Defendant offered to employ Plaintiff as an hourly CSR, offering to compensate Plaintiff at approximately $19.00 per hour, in addition to a non-discretionary bonus of an additional $2.00 per hour to be applied to *all* hours Plaintiff worked during any workweek he met his set quotas as well a non-discretionary bonus of an additional $5.00 per completed application submitted to Defendant.

94.     Upon information and belief, Defendant similarly offered to pay the Nationwide Class certain rates per hour for each hour worked as a call center employee, in addition to non-discretionary bonuses. Each Nationwide Class members' contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of their regular business activities.

95.     Plaintiff and the Nationwide Class accepted the offer and worked for Defendant as CSRs or other job titles performing the same or similar job duties.

96.     Plaintiff and the Nationwide Class also accepted the offer by their performance—i.e., reporting for work and completing the tasks assigned to them.

97.     Plaintiff's work, and the work of the Nationwide Class, required pre-shift and post-lunch boot up time.

98.     Plaintiff and every other Nationwide Class member performed under their oral contract by doing their jobs, in addition to carrying out the pre-shift and post-lunch off-the-clock activities that Defendant required.

99.     Upon information and belief, Defendant does not allow its employees to clock in to begin being compensated until after the pre-shift and post-lunch boot up procedures are complete.

100.    Despite being required to complete these pre-shift and post-lunch integral job duties, Plaintiff and the Nationwide Class were not compensated at their hourly rate for their work performed in workweeks they worked up to 40 hours per workweek.

101.    By failing to pay Plaintiff and the Nationwide Class for the pre-shift and post-lunch boot up time, Defendant breached its contract with Plaintiff and the Class to pay their hourly rate for each hour worked.

102.    In sum, the facts set forth above establish the following elements and terms of the contract:

f.      Defendant's Offer: a set hourly rate for each hour worked as a call center employee;

g.      Plaintiff and the Nationwide Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendant);

h.      Defendant breached the contract by not pay Plaintiff and the Nationwide Class for each hour (or part thereof) worked; and,

i.      By failing to pay Plaintiff and the Nationwide Class their hourly rate for each hour worked, Plaintiff and the Class were damaged in an amount to be proven at trial.

103.    These claims are appropriate for nationwide class certification under Rules (b)(3) and/or (c)(4) because the law of contracts is substantially similar throughout the United States.

104.   As a direct and proximate cause of Defendant's breach, Plaintiff and the Nationwide Class were damaged at an amount to be proven at trial.

## COUNT III
## QUASI-CONTRACTUAL REMEDIES, UNJUST ENRICHMENT

105.   Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows:

106.   Upon information and belief, Plaintiff's and every other Nationwide Class members' pre-shift and post-lunch boot up time provided valuable work and income for Defendant; namely, compensation to Defendant for completing telephone sales and customer service activity that directly benefited Defendant.

107.   Plaintiff and the Nationwide Class were unable to perform any job function without booting up and logging in to their computer and required programs. In short, in order to start their work of fielding customer calls precisely at their designated start time, Plaintiff and the Nationwide Class worked off-the-clock before their shift began and after ending their unpaid lunch break. Without the pre-shift and post-lunch boot-up time, Plaintiff and the Nationwide Class were unable to take customer calls at their designated start times. Further, upon information and belief, Defendant does not allow their employees to clock in to begin being compensated until after the pre-shift and post-lunch boot up procedures are complete.

108.   As part of their ongoing employment relationships with Defendant, Plaintiff and other Nationwide Class members expected to be paid wages for the time they spent doing their jobs, including necessary pre-shift and post-lunch boot up activities performed each shift.

109.   By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary pre-shift and post-lunch boot up activities, Defendant has been unjustly

enriched at the expense of Plaintiff and the Nationwide Class in an amount to be determined at trial.

110.    By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary activities, Defendant has also saved itself hundreds-of-thousands of dollars in unpaid payroll taxes – taxes that would have otherwise been credited to Plaintiff's and Nationwide Class members' benefit.

111.    It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiff and the Nationwide Class without compensation.

112.    These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of unjust enrichment is substantially similar throughout the United States.

113.    As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Nationwide Class were harmed at an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated individuals, requests the following relief:

a.      An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.      An Order certifying this action as a class action for the Rule 23 Breach of Contract Nationwide Class (or for the Rule 23 Unjust Enrichment Nationwide Class if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.      An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses,

and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

d. An Order designating the Named-Plaintiff to act as the Nationwide Class Representatives on behalf of all similarly situated individuals for both the FLSA and the Rule 23 Breach of Contract or Unjust Enrichment Nationwide Classes;

e. An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant violated its obligations under the FLSA;

g. An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid overtime pay calculated at the rate of one and one- half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of forty (40) hours per week for the past three (3) years for Plaintiff and for the FLSA Class;

h. An Order awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid overtime found owing to Plaintiff under the FLSA;

i. An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid hourly wages and non-discretionary bonuses earned by unpaid, in an amount to be proven at

trial;

j.           An Order awarding reasonable attorney fees and costs incurred by

Plaintiffs in filing this Action;

k.           An Order awarding pre and post-judgment interest to Plaintiffs on

these damages; and

l.           An Order awarding such further relief as this court deems appropriate.

## **<u>JURY DEMAND</u>**

NOW COME Plaintiff, by and through her Attorneys, and hereby demand a trial by jury pursuant to *Rule 38 of the* Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated this 24th day of June 2020

Respectfully submitted,

*/s/ Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No.: 0085476
RICHARD CELLER LEGAL, P.A.
10368 W. State Road 84, Suite 103
Davie, FL 33324
Telephone: (866) 344-9243
Facsimile:  (954) 337-2771
E-mail: noah@floridaovertimelawyer.com

*Trial Counsel for Plaintiff*

EXHIBIT A

**U.S. Department of Labor**
Wage and Hour Division



(Revised July 2008)

# Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information concerning the application of the FLSA to employees working in call centers.

**Characteristics**

A call center is a central customer service operation where agents (often called customer care specialists or customer service representatives) handle telephone calls for their company or on behalf of a client. Clients may include mail-order catalog houses, telemarketing companies, computer product help desks, banks, financial services and insurance groups, transportation and freight handling firms, hotels, and information technology (IT) companies.

**Coverage**

If the annual dollar volume of a call center's sales or business is $500,000 or more, and the enterprise has at least two employees, all employees of the enterprise are covered by the FLSA on an "enterprise" basis. An enterprise may consist of one establishment, or it may be made up of multiple establishments.

Additionally, the FLSA also provides an "individual employee" basis of coverage. If the gross sales or volume of business done does not meet the requisite dollar volume of $500,000 annually, employees may still be covered if they individually engage in interstate commerce, the production of goods for interstate commerce, or in an occupation closely related and directly essential to such production. Interstate commerce includes such activities as transacting business via interstate telephone calls, the Internet or the U.S. Mail (such as handling insurance claims), ordering or receiving goods from an out-of-state supplier, or handling the accounting or bookkeeping for such activities.

**Requirements**

Covered nonexempt employees are entitled to be paid at least the federal minimum wage as well as overtime at time and one-half their regular rate of pay for all hours worked over 40 in a workweek. (This may not apply to certain executive, administrative, and professional employees, including computer professionals and outside sales, as provided in Regulations 29 CFR 541).

The FLSA requires employers to keep records of wages, hours, and other items, as specified in the recordkeeping regulations. With respect to an employee subject to both minimum wage and overtime provisions, records must be kept as prescribed by Regulations 29 CFR 516. Records required for exempt employees differ from those for non-exempt workers.

The FLSA also contains youth employment provisions regulating the employment of minors under the age of 18 in covered work, as well as recordkeeping requirements. Additional information on the youth employment provisions is available at www.youthrules.dol.gov.

**Typical Problems**

Hours Worked:  Covered employees must be paid for all hours worked in a workweek.  In general, "hours worked" includes all time an employee must be on duty, or on the employer's premises or at any other prescribed place of work, from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday.  Also included is any additional time the employee is allowed (i.e., suffered or permitted) to work.  An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails.

Rest and Meal Periods:  Rest periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked.  *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal.

Recordkeeping:  A daily and weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept.

Overtime:  Earnings may be determined on an hourly, salary, commission, or some other basis, but in all such cases the overtime pay due must be computed on the basis of the regular hourly rate derived from all such earnings.  This is calculated by dividing the total pay (except for certain statutory exclusions) in any workweek by the total number of hours actually worked.  See Regulations 29 CFR 778.

Salaried Employees:  A salary, by itself, does not exempt employees from the minimum wage or from overtime.  Whether employees are exempt from minimum wage and/or overtime depends on their job duties and responsibilities as well as the salary paid.  Sometimes, in call centers, salaried employees do not meet all the requirements specified by the regulations to be considered as exempt.  Regulations 29 CFR 541 contain a discussion of the requirements for several exemptions under the FLSA (i.e., executive, administrative, and professional employees – including computer professionals, and outside sales persons).

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**                                                          **1-866-4-USWAGE**
Frances Perkins Building                                                               TTY: 1-866-487-9243
200 Constitution Avenue, NW                                                        **Contact Us**
Washington, DC 20210

EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO.:

JERMAINE NATTOO, on behalf of himself
and all other similarly situated,

      Plaintiff,

vs.

TPUSA-FHCS, INC., a Foreign Profit Corporation
(d/b/a) TELEPERFORMANCE USA

      Defendant.
_____/

## CONSENT TO BECOME PARTY PLAINTIFF

I,   Jermaine Nattoo   , consent to become the party

plaintiff in the above-styled Lawsuit.

Date:   06/24/2020

Signature: _____

Print:   Jermaine Nattoo

EXHIBIT C

**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division
(December 2019)

# Fact Sheet #56C: Bonuses under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information regarding bonuses and the regular rate of pay under the FLSA for <u>non-exempt employees</u>.  For information regarding nondiscretionary bonuses and employees employed as executive, administrative, professional, or outside sales employees, who are exempt from the FLSA's minimum wage and overtime requirements, see Fact Sheet #17U.

The FLSA requires that most employees in the United States be paid at least the federal minimum wage for all hours worked and overtime pay at not less than time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek.  Fact Sheet #22 provides general information about determining hours worked.

The amount of overtime pay due to an employee is based on the employee's regular rate of pay and the number of hours worked in a workweek regardless of whether the employee is paid on a piece rate, day rate, commission, or a salary basis.  Fact Sheet #23 provides additional information regarding overtime pay.

A bonus is a payment made in addition to the employee's regular earnings.  Under the FLSA, all compensation for hours worked, services rendered, or performance is included in the regular rate of pay.  The Act provides an exhaustive list of payments that may be excluded from the regular rate of pay.  Specifically, 29 U.S.C. §§ 207(e)(1) and (3) contain statutory provisions which address the excludability of certain bonuses.  Unless specifically noted, payments that are excluded from the regular rate may not be credited towards overtime compensation due under the FLSA.  Information regarding additional exclusions from the regular rate is available in Fact Sheet #56A.

<u>Discretionary Bonuses</u>

Discretionary bonuses are excludable from the regular rate of pay.  A bonus is discretionary only if *all* the statutory requirements are met:

- The employer has the sole discretion, until at or near the end of the period that corresponds to the bonus, to determine whether to pay the bonus;

- The employer has the sole discretion, until at or near the end of the period that corresponds to the bonus, to determine the amount of the bonus; and

- The bonus payment is not made according to any prior contract, agreement, or promise causing an employee to expect such payments regularly.

Examples of some common bonuses that may be excludable discretionary bonuses if they meet the statutory requirements include:

- Bonuses for overcoming a challenging or stressful situation;
- Bonuses to employees who made unique or extraordinary efforts not awarded according to pre-established criteria;
- Employee-of-the-month bonuses;
- Severance bonuses; and

1

- Referral bonuses to employees not primarily engaged in recruiting activities (subject to additional criteria).[1]

The label assigned to the bonus and the reason for the bonus do not conclusively determine whether the bonus is discretionary.  While a bonus may be labeled discretionary, if it does not comply with the provisions of the statute, then the bonus is not an excludable discretionary bonus.  The determination must be made on a case-by-case basis depending on the specific circumstances.

A discretionary bonus may not be credited towards overtime compensation due under the FLSA.

<u>Nondiscretionary Bonuses</u>

A nondiscretionary bonus is a bonus that fails to meet the statutory requirements of a discretionary bonus. Nondiscretionary bonuses are included in the regular rate of pay, unless they qualify as excludable under another statutory provision (see below).

Examples of nondiscretionary bonuses that must be included in the regular rate include:

- Bonuses based on a predetermined formula, such as individual or group production bonuses;
- Bonuses for quality and accuracy of work;
- Bonuses announced to employees to induce them to work more efficiently;
- Attendance bonuses; and
- Safety bonuses (i.e., number of days without safety incidents).

Such bonuses are nondiscretionary because the employees know about and expect the bonus.  The understanding of how an employee earns one may lead to an expectation to receive the bonus regularly.  The fact that the employer has the option not to pay the promised bonus does not make the bonus discretionary.

<u>Gifts and payments in the nature of gifts on special occasions</u>

Sums paid as gifts and payments in the nature of gifts made on holidays or on other special occasions as a reward for service may be excluded from the regular rate, provided the amounts of the gifts (or payments) are not measured by or dependent on hours worked, production, or efficiency.

Certain longevity bonuses are excludable from the regular rate as gifts when given as a reward for service or tenure and provided the bonus payments are not made pursuant to a collective bargaining agreement or a city ordinance or policy.[2]

Sign-on bonuses given to employees with or without clawback provisions may be excluded as gifts or may be excluded under 29 U.S.C. § 207(e)(2) as other payments that are not compensation for hours of employment, or otherwise tied to quality or quantity of work performed. However, sign-on bonuses paid pursuant to a CBA, ordinance, or policy with a clawback provision may not be excluded as a gift and must be included in the regular rate.

---

[1] Referral bonuses may be discretionary, provided the following criteria are met: (1) employee participation is strictly voluntary; (2) the employee's recruitment efforts do not involve significant time; and (3) the activity is limited to after-hours solicitation done only among friends, relatives, neighbors and acquaintances as part of the employee's social affairs.

[2] Like all excludable gifts, a longevity or sign-on bonus is an excludable gift only if the bonus payment is not paid pursuant to a contract and is not so substantial that it can be assumed that employees consider it a part of the wages for which they work.

2

**Calculating Overtime Pay Based on the Regular Rate**

Overtime pay is calculated based only on payments to the employee that are required to be included in the regular rate of pay. The following steps can be used to calculate the regular rate of pay and overtime compensation due when the employee is paid on an hourly, piece rate, day rate, job rate, commission, or salary basis.

  Step 1: Total compensation for the week (except the statutory exclusions) ÷ Total hours worked in the week = Regular Rate per hour for the week (must be at least the federal minimum wage)

  Step 2: Regular Rate x (.5) = Half-time premium for each overtime hour (note the straight time for the overtime hours is included in Step 1)

  Step 3: Half-time premium pay rate x Overtime hours = Overtime compensation due

**Example A: Nondiscretionary bonus**

A non-exempt employee is paid $10.00 per hour and receives a $50.00 bonus in a particular week that was promised for helping to produce a special order for a customer two weeks earlier than previously scheduled.  The employee worked 43 hours that week.  The following is an example of how to compute overtime pay based on the employee's regular rate:

  $10.00 per hour x 43hours = $430.00 (total compensation for straight time)
  $430.00 + $50.00 (bonus) = $480.00 (total compensation)
  $480.00 ÷ 43 hours = $11.16 (regular rate)
  $11.16 x .5 = $5.58 (half time premium pay rate)
  $5.58 x 3 overtime hours = $16.74 (overtime pay due)
  $480.00 + $16.74 = $496.74. (total due)

**Example B: Shift differential plus nondiscretionary bonus**

A non-exempt employee is paid $15.00 per hour plus an evening shift differential of $1.00 per hour for all hours worked during an evening shift.  The employee worked 45 hours, 30 of which were during evening shifts, in a week.  The employee also earned a $100.00 bonus that week that was promised for helping to produce a special order for a customer two weeks earlier than previously scheduled.  The following is an example of how to compute overtime pay based on the employee's regular rate:

  $15 per hour x 45 hours = $675 (compensation for straight time at $15 hourly rate)
  $1.00 x 30 hours = $30 (shift differential for the evening shifts)
  $675 + $30 (shift differential) + $100 (bonus) = $805 (total compensation)
  $805 ÷ 45 = $17.89 (regular rate)
  $17.89 x .5 = $8.95 (half time premium pay rate)
  $8.95 x 5 overtime hours = $44.75 (overtime pay due)
  $805 + $44.75 = $849.75 (total due)

**Example C: Nondiscretionary bonus and an excludable discretionary bonus**

A non-exempt employee is paid $10.00 per hour and receives a $50.00 bonus that was promised in a particular week for helping to produce a special order for a customer two weeks earlier than previously scheduled.  The employee also receives a $25.00 on-the-spot bonus that week (because it was not preannounced to the employee, it is an excludable discretionary bonus).  The employee worked 43 hours that week.  The following is an example of how to compute overtime pay based on the employee's regular rate:

3

$10.00 per hour x 43 hours = $430.00 (total compensation for straight time)
$430.00 + $50.00 (excludes $25.00 discretionary bonus) = $480.00 (total compensation)
$480.00 ÷ 43 hours = $11.16 (regular rate)
$11.16 x .5 = $5.58 (half time premium pay rate)
$5.58 x 3 overtime hours = $16.74 (overtime pay due)
$480.00 + $16.74 +$25.00 (discretionary bonus) = $521.74 (total due)

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866- 4USWAGE (1-866-487-9243).**

When the state laws differ from the federal FLSA, an employer must comply with the standard most protective to employees.  Links to your state labor department can be found at https://www.dol.gov/agencies/whd/state/contacts.

The contents of this document do not have the force and effect of law and are not meant to bind the public in any way.  This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue,
NW Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-866-487-9243
**Contact Us**

4