UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14207-CIV-MAYNARD

JERMAINE NATTOO, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

TPUSA-FHCS, INC., a Foreign Profit Corporation
(d/b/a) TELEPERFORMANCE USA

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND TO FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS (DE 34)

**THIS CAUSE** comes before this Court on Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members. DE 34. For the reasons set forth below, as well as the lenient standard applicable to this early stage, Plaintiff's motion is granted.

### BACKGROUND

On June 24, 2020, Plaintiff Jermaine Nattoo filed a Complaint on behalf of himself and others similarly situated against Defendant TPUSA-FHCS, Inc., a foreign profit company doing business as Teleperformance USA ("Defendant"). DE 1. The Complaint alleges that Defendant operates call centers throughout the United States and fails to pay its customer service representatives for hours worked in excess of forty hours per week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201. DE 1 at ¶3. The Complaint alleges the existence of an FLSA class as well as a class under Rule 23 of the Federal Rules of Civil Procedure. DE 1 at ¶¶61-

72. With respect to the FLSA, Plaintiff seeks in the Complaint to represent "all current and former hourly customer service representatives or other job titles who perform similar job duties who worked for TPUSA at any time in the last three (3) years." *Id*. at ¶61. In the Motion for Conditional Certification, however, Plaintiff seeks to conditionally certify a more narrow class of "current and former similarly situated <u>Florida</u> call center employees of defendant, TPUSA- Inc., who were employed/classified as customer service representatives or sales agents or held similar job titles, and <u>worked for Defendant at any time in Florida from June 2017 through resolution of this case</u>." DE 34 at ¶1 (emphasis added). In support of the Motion, Plaintiff proffers his own declaration along with declarations from five other individuals – India Crosske, Erica Vasquez, Sam Lamanna, Wislet Metayer, and Mickel Major – who say they worked as customer service representatives in Defendant's Port St. Lucie and North Lauderdale offices. DE 34-2, 34-3, 34-4, 34-5, 34-6 and 34-7. These individuals opted into the class by filing Consents to Join, DE 4, 30, 31, 32, 33, but two of these consents were stricken from the record based on the parties' agreement. DE 56 (order granting Defendant's motion to strike consents to join filed by Sam Lamanna and Mickel Major). As a result, the undersigned considers the declarations of the named Plaintiff, Erica Vasquez, India Crosske and Wislet Metayer in ruling on Plaintiff's motion to conditionally certify. Vasquez, Crosske and Metayer will be referred to as Opt-In Plaintiffs throughout this Order.

     Plaintiff declares that there are "at least 500 employees" that perform substantially similar duties who were not paid overtime for pre-and post-shift work causing them to work more than forty hours per week. DE 34-2 at ¶40. Plaintiff believes that if formal notice is given, current and former employees will opt into the lawsuit. Id. at ¶39.

     The Opt-in Plaintiffs' declarations are virtually identical to Plaintiff's. All state that they were customer service representatives or sales agents employed by the Defendant in Florida to

make and take phone calls from Defendant's customers at Defendant's call centers. *See e.g.* DE 34-2 at ¶4, 34-3 at ¶¶6-7, 34-4 at ¶¶5-6, 34-6 at ¶4. All claim to have been required to arrive for their work shifts between fifteen and thirty minutes early to perform pre-shift tasks before they clocked in to work. These pre-shift duties included entering through security, finding a locker to store their personal belongings, finding available workstations and chairs, finding available computers, finding and retrieving headsets, and logging into the computer by completing various standardized log in procedures. Plaintiffs also say they were required to remain on the phones during scheduled meal/rest breaks when the call center experienced high call volume, calls were backed up, or they were "stuck on the phone" with a customer. *E.g.* DE 34-3 at ¶¶8-11. In addition, Plaintiffs say they were required to perform work duties after clocking out for the day because they had to shut down their computers and programs which could take five to ten minutes every day. *Id*. at ¶24. Plaintiffs allege the Defendant did not pay them for this pre or post shift work, which caused them to work more than forty hours per week without the pay required by the FLSA. *See e.g.* DE 34-2 at ¶8, 34-3 at ¶8, 34-4 at ¶8, 34-6 at ¶8.

## DISCUSSION

Plaintiff's motion makes two requests. First, Plaintiff asks the Court to conditionally certify an FLSA class pursuant to 29 U.S.C. § 216(b) of the FLSA. Second, Plaintiff requests that the Court "facilitate notice," by (1) directing Defendant to provide Plaintiffs with a list of names and contact information of any potential class members, (2) authorizing Plaintiffs to notify these persons that they may join the litigation and assert claims under the FLSA, (3) authorizing potential class members to electronically sign consents to join, (4) requiring Defendant to post notices about the litigation in its Florida call centers, and (5) giving potential class members ninety days to opt into the class. DE 34. The undersigned addresses each of these requests in turn.

### I. Conditional Certification

Pursuant to 29 U.S.C. § 216(b) of the FLSA, the Court may issue an order conditionally certifying a collective action of employee-plaintiffs against their employer for unpaid minimum wages or unpaid overtime. Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, a collective action under the FLSA requires each putative plaintiff to affirmatively opt-into the class action and those opt-in plaintiffs must be similarly situated. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216-17 (11th Cir. 2001).

The Eleventh Circuit has used a two-stage process to decide whether to certify an opt-in class. *Reyes v. AT&T Corp.*, 801 F. Supp. 2d 1350, 1355 (S.D. Fla. 2011) (*citing Hipp*, 252 F.3d at 1219). During stage one, commonly referred to as the "notice stage," the plaintiff must demonstrate a reasonable basis to believe (1) other employees of the Defendant desire to opt-in; and (2) these other employees are similarly situated with respect to their job requirements and pay provisions. *Id.* at 1355. These two elements have been referred to as the interest prong and similarly situated prong. *Id*. at 1356. Further, the Eleventh Circuit has stated the broad discretion afforded to the district court at the notice stage is constrained a bit by the leniency of the standard, so where discovery has not been completed and the court has minimal evidence, the typical result is that the motion is granted. *Hipp*, 252 F.3d at 1219. At stage two, the Defendant files a motion to decertify the class. *Hipp*, 252 F.3d at 1218. After a discovery period allowing the parties to determine the extent to which opt-in plaintiffs are interested in the litigation and factually similar, the court then rules on whether the class should be certified. *Id*. This second stage has a far more stringent standard of review than the notice stage's lenient review. *Id.*

To satisfy the interest prong at the notice stage, a plaintiff must make a showing that other employees have the desire to opt-in to the putative class. *Reyes*, 801 F. Supp. 2d at 1355. "The best

evidence of a potential class is the existence of numerous named plaintiffs who have already opted in [.]" *Benitez v. Balans L.C.*, 2010 WL 11602404, at *3 (S.D. Fla. Dec. 6, 2010). This is not a heavy burden on the plaintiff. *Id.*; *see also Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 676 (S.D. Fla. 2013) (the burden on a plaintiff to demonstrate the "existence of other potential opt-in plaintiffs is not onerous"). Even the existence of just one other co-worker who desires to join the class is sufficient to satisfy the interest prong. *Bennet v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1283 (S.D. Fla. 2012); *see also Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512, at * 4 (S.D. Fla. May 17, 2006) (the affidavit of at least one other co-worker raises the plaintiff's contention that others desire to join the suit beyond mere speculation).

Satisfying the substantial similarity prong has also been described as "not particularly stringent," "fairly lenient," and "flexible." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d. 1233, 1261 (11th Cir. 2008) (internal quotations omitted). To be conditionally certified, a plaintiff need only show that class members are "'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir.1991). A plaintiff does not need to show "his position is 'identical' to the position held by any other putative class member." *Reyes*, 801 F. Supp. 2d at 1356 (citing *Grayson*, 79 F.3d at 1096 n.2). Factual matters related to duties, locations, and other variations between putative plaintiffs have usually been reserved for the later stage in the process. *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) (granting conditional certification despite factual differences in opt-in plaintiffs' duties and titles); *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005) (granting conditional certification despite variation in location and time spent at different locations operated by defendant).

Regarding the interest prong, in addition to the named Plaintiff, three other employees have consented to join this litigation as Opt-in Plaintiffs. DE 4, 30 and 32. They have submitted declarations confirming their interest in participating in the case. 34-3, 34-4, 34-6. Plaintiffs' declarations state that they worked for Defendant as customer service representatives or sales agents during the relevant time period, their duties included making and taking phone calls to and from Defendant's customers, they were hourly employees who worked before and after their shifts without pay, and they were not paid overtime for working more than forty hours per week. Their unpaid pre-shift activities included going through security, finding workstations, computers and equipment, and logging into their computers before they could clock into work.  These pre-shift activities typically took fifteen to thirty minutes, and declarants were not paid for that time. Declarants also allege that they were required to clock out for the day before shutting down and turning off their computers, which often took one to five minutes. They were not paid for these post-shift activities either. The declarants say they were not paid overtime when they worked more than forty hours a week.

Defendant submits declarations from other employees disputing these claims. DE 44-1, 44-7, 44-8, 44-9, 44-10, 44-11, 44-12, 44-13, 44-14, 44-15, 44-16, 44-17. The declarants include HR representatives, customer service supervisors, and current employees who all dispute Plaintiff's allegations that Defendant required workers to work more than forty hours a week without proper pay. Declarants Laura Cancio, Melinda Graham, Aaliyah Harris, Raymon Jones, Evince Lucien, Rebecca Metelus, Autumn Otto, and Danielle Paris all say that they were never required to stay after their shifts or before logging into their computers. DE 44-7 at ¶15, 44-8 at ¶15, 44-9 at ¶16, 44-10 at ¶16, 44-11 at ¶16, 44-12 at ¶16, 44-13 at ¶16, 44-14 at ¶15. Declarants Jackie Julceus, Natalie Valentine, and Larry Sell all discuss the use of the CCMS system or "Call Center

Management System," which is designed to keep track of employees work times and prevent undocumented work post and pre-shift. DE 44-15 at ¶¶9, 23, 44-16 at ¶¶8, 21, 44-17 at ¶¶8, 12. Human Resource Director Stephen Butauski's Declaration corroborates these factual contentions. DE 44-1 at ¶¶7-9.

Defendant's declarations contradict Plaintiffs' allegations that Defendant failed to compensate employees within the guidelines of the FLSA. However, Defendant asks the Court to do what it should not at this stage of the case, that is, decide facts and determine credibility based on competing declarations without further discovery. Further, despite Defendant's declarations, case law demonstrates that the existence of just one opt-in plaintiff is enough to create a reasonable basis to believe that interest exists. *See Bennet*, 880 F. Supp. 2d at 1283 (just one other co-worker who desires to join is sufficient to "rais[e] the Plaintiff's contention beyond one of pure speculation") (quoting *Guerra*, 2006 WL 2290512, at * 4); *see also Rojas., Inc.*, 297 F.R.D. at 676; *see also Compere v. Nusret Miami, LLC*, 391 F. Supp. 3d 1197, 1205 (S.D. Fla. 2019). Here, not one, but three employees in addition to the Plaintiff have declared their interest in joining this litigation. DE 1, 4, 30, 32. That is sufficient to satisfy the interest prong at this stage of the case.

Plaintiffs also have demonstrated a reasonable basis to believe other similarly situated employees would join this litigation. Plaintiffs submit declarations from individuals who say they worked as customer service representatives or sales agents for the Defendant; had certain duties in common; worked more than forty hours per week; and did not receive overtime pay. These similarities are sufficient for purposes of conditional FLSA certification. *See Dybach*, 942 F.2d at 1567-68 (class members must be similarly situated with regard to their job requirements and pay provisions for an FLSA class to be conditionally certified); *see also Reyes*, 801 F. Supp. 2d at 1357 (class members were substantially similar when they shared pay provisions, shared duties, and

worked more than forty hours a week without overtime pay); *see also Vondriska,* 564 F. Supp. 2d at 1335 (granting conditional certification during notice stage despite factual differences in opt-in plaintiffs' duties and titles).

As with the interest prong, Defendant asks the Court to look beyond the Plaintiffs' declarations and consider factual differences presented by the Plaintiffs' depositions to determine whether the similarly situated requirement has been met. Defendant points out, for example, that the Opt-in Plaintiffs worked on different customer accounts and reported different details about the types of activities they did without pay. Defendant also relies on the declarations it submitted from employees who say they were not required to engage in pre and post shift unpaid work activities. At this stage, however, the Court will not make credibility determinations or decide which side has the better evidence. Seeking a factual determination on the similarly situated issue "by presenting a vast amount of affidavit evidence," shows "a fundamental misunderstanding of the nature of the proceedings at this stage of the litigation." *Reyes*, 801 F. Supp. 2d at 1358 (*quoting Morden v. T-Mobile USA, Inc.*, 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006)). Factual determinations and decisions about credibility are best left to the decertification process. *Simpkins v. Pulte Home Corp.*, 2008 WL 3927275, at *5 (M.D. Fla. Aug. 21, 2008) (certifying conditional class despite Defendant's submission of its own declarations to explain "what it perceives as a factual differences between members of the potential opt-in class").

As for Defendant's argument that Plaintiff's declarations are "cookie cutter," the Court notes that the declarations Defendant submits are fairly "cookie-cutter" too. Thus, the Court will wait until further discovery is completed to weigh credibility, examine inconsistencies and analyze factual differences between declarations, depositions, and other evidence in this case. At this point, the Court is required only to judge whether Plaintiffs' have submitted "detailed allegations

supported by affidavits which successfully engage defendants' affidavits to contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). In this Court's view, Plaintiffs have met this low burden at this stage of the case.

Based on the evidence before it, the Court will conditionally certify and facilitate notice to the following proposed class:

> **current and former call center employees of Defendant who were employed/classified as customer service representatives or sales agents or held similar job titles and worked for Defendant at any time in Defendant's Port St. Lucie office from June 2017 through resolution of this case**.

The Court limits the conditional class to current and former employees who worked in Defendant's Port St. Lucie office because that is the office where Plaintiff and the Opt-in Plaintiffs worked. Plaintiffs have failed to show the existence of similarly situated employees from Defendant's other offices who desire to join this litigation.[1]

## II.    Notice

Defendant raises several objections to Plaintiff's proposed Notice, which may be found in the record at DE 34-8. The Court addresses Defendant's objections as follows.

---

[1] Sam Lamanna and Mickel Major filed Consents to Join and submitted declarations, but Plaintiffs subsequently agreed to dismiss these individuals from the case. DE 55. Although the parties' pleadings suggest that Lamanna and Major worked in the North Lauderdale call center, only Sam Lamanna claims to have worked in the North Lauderdale office in his Declaration. DE 34-5 at ¶6. Major's avers in his Declaration that he worked in the Port St. Lucie call center. DE 34-7 at ¶6. For its part, Defendant disputes that it even owns the North Lauderdale office. According to Defendant, North Lauderdale is owned by Defendant's parent company, TPUSA, Inc., and Defendant is not responsible for any of the North Lauderdale employees. DE 53 at pp. 2-3, 7 (citing S. Butauski Decl. at DE 44-1). This Court need not resolve this issue, however. Given Mr. Lamanna's dismissal from the case, no North Lauderdale employees are presently involved in the litigation, nor have Plaintiffs established that employees in North Lauderdale are similarly situated to them. Thus, this Court conditionally certifies a class of former and current employees who worked in the Port St. Lucie office only.

### A. Dissemination of Notice

Defendant is adamant that the Notice of Conditional Class Certification be sent to the Port St. Lucie call center only. DE 44 at 17. This Court agrees. *See* fn. 2, *supra.* Upon review of the cases Defendant cites, the Court finds these authorities persuasive. For example, in *Pomareda v. Homebridge Mortgage Bankers Corp.*, the court limited the scope of the notice to only Deerfield Beach plaintiffs because prospective opt-in plaintiffs from California and New York had not filed consents to join. No. 06-61864-CIV, 2007 WL 624331, at *2-3 (S.D. Fla. Feb. 23, 2007)). Similarly, in *Wynder v. Applied Card Systems, Inc.,* only employees who worked at the Boca Raton location showed interest in the litigation, nowhere else. *See* No. 09-80004-CIV, 2009 WL 3255585, at *3 (S.D. Fla. October 7, 2009). In *Wynder,* 2009 WL 3255585, at *3. The holding in *Wynder* supports Defendant's argument that a lack of opt-in plaintiffs from a particular location diminishes the likelihood that employees from that location are interested in joining. Like *Pomereda* and *Wynder,* the Opt-in Plaintiffs in this case worked in only one of the Defendant's locations. Without a single opt-in plaintiff from elsewhere, the class must be limited to the Port St. Lucie office only.

Defendant further argues that Notice should be provided only to employees working on a particular account in the Port St. Lucie office because that is the account the Plaintiffs worked on and no other account is pertinent to the litigation. DE 44 at 17. The Court rejects this request. Limiting notice only to employees working on a particular account would require the Court to ascertain facts not known with certainty at this stage of the case. Distinguishing between employees based on accounts worked on or assigned supervisors requires precisely the kind of factual analysis better made post-discovery. For these reasons, the Court will permit the Plaintiffs

to provide notice to former and current customer service representatives who worked at the Port St. Lucie call center, regardless of which accounts these representatives serviced.

### B. The Lookback Period

Defendant's second objection is that Plaintiffs' proposed Notice has a "lookback" period of three years. DE 44 at ¶18. A claim for overtime wages under the FLSA must be brought within two years after the cause of action accrues, unless the cause of action "arises out of a willful violation" on the part of the employer, in which case it must be brought within three years from when the cause of action accrues. 29 U.S.C. § 255(a). Defendant argues that any alleged violation of the FLSA in this case was not willful. Thus, the proper lookback period is two years and notice should be limited to only those individuals whose claims would have accrued during that time. DE 44 at 18-20.

A violation of the FLSA is "willful" if the employer knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-135 (1988); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985). Even if an employer acts unreasonably, such action is not considered willful unless the employer was *reckless* in determining its legal obligations. *See Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168, 1175 (S.D. Fla. 2007) (emphasis added) (finding a genuine dispute of fact as to whether an employer acted with reckless disregard when it had sought the advice of counsel as to its obligations under the FLSA).

Defendant argues their conduct did not willfully violate the FLSA because they had various protocols in place to prevent unpaid overtime. DE 44 at 18-19. These included providing reminders of time keeping policies, posting notices of the policies, and providing intranet information about company practices for time keeping. *Id.* Plaintiff agrees that protocols existed but argues that

Defendant failed to follow them. DE 1 at ¶29. Additionally, Plaintiff states in its Reply that "Defendant has been investigated by the Department of Labor well over twelve (12) times, throughout the country, for the same FLSA violations, paying millions of dollars in back wages to thousands of employees[.]" DE 53 at 8. If true, such evidence might establish willfulness. At this stage of the litigation, the Court cannot determine facts relating to willfulness. The Court will therefore overrule Defendant's request to limit notice to a two-year lookback period. Should discovery reveal that the alleged violations were not willful, the Court can strike the claims of any opt-in plaintiffs that fall beyond the two-year period at a later stage in this case.

### C. Defendant's Other Objections

In addition to the above objections, Defendant requests that the Notice be distributed by first class mail and personal e-mail only, and that notice of the litigation not be posted at the workplace. DE 44 at 21. Defendant requests a Forty-Five (45) day opt-in period, rather than the Ninety (90) day period requested by the Plaintiffs. *Id.* Defendant requests that the names of defense counsel, the names of other plaintiffs' lawyers, and information regarding the rights and obligations of putative class members be included in the Notice. *Id.* at 22. Defendant objects to providing employees' social security numbers or phone numbers to the Plaintiffs for the purpose of giving notice of the class action. *Id.* Defendant asks that the scrivener's error on page five of Plaintiff's proposed Consent to Join, which is attached to Plaintiff's proposed Notice, be corrected.[2] DE 34-9 at 5. Defendant makes no objections to class members being allowed to electronically sign Consents to Join.

---

[2] On page five of Plaintiff's Proposed Consent to Join, there is a reference to an unrelated matter referred to in Plaintiff's pleadings as Michael Dunsavage v. Aloha Pool Services, Inc., Michael A. Folz, and/or Pamela M. Folz. This reference must be omitted from the Notice.

In Plaintiff's Reply, Plaintiff agrees to the Forty-Five (45) day opt-in period, rather than its proposed Ninety (90) day opt-in period. DE 53 at 9. Plaintiff also agrees to send notice by personal email and first-class mail and agrees to add defense counsel's names to the Notice. *Id.* Plaintiff further agrees to add a section in the Notice regarding the rights and obligations associated with being a putative class member. *Id.* Plaintiff does not address Defendant's objections to providing them with social security numbers or phone numbers. Plaintiff also does not address the scrivener's error on page five of the proposed Consent to Join, or Defendant's desire to include the names of other plaintiff' lawyers so potential class members will know they are not required to hired Plaintiffs' counsel.

Based on the parties' agreement, the Court instructs as follows: (1) The Notice shall be distributed by personal email and first-class mail only; (2) The opt-in period shall be Forty-Five (45) days; (3) The Notice shall include the names and contact information of defense counsel; (4) The Notice shall include a section discussing the rights and obligations associated with becoming a member of the putative class; and (5) Putative class members may electronically sign the Consent to Join forms. Regarding the remaining issues, the Court sees no reason social security numbers and phone numbers should be disclosed. Therefore, the Court grants Defendant's request not to provide that information to the Plaintiffs. Plaintiffs are instructed to correct any scrivener's errors included in the proposed Notice. Lastly, only the names of counsel of record in this case shall be referenced in the Notice. The Notice shall, however, include a section explaining that putative class members have a right to seek independent counsel.

## CONCLUSION

Based on the foregoing, it is therefore,

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Conditionally Certify Collective Action and to Facilitate Notice to Potential Class Members (DE 34) is **GRANTED**. It is further,

**ORDERED AND ADJUDGED** that the Parties shall confer and file a joint proposed Notice to Putative Opt-In Plaintiffs incorporating the Court's ruling within seven (7) days of the date of this Order.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 7th day of July, 2021.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE