**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO: 2:20-cv-14207-SMM**

**JERMAINE NATTOO and**
**ROSE VOLTAIRE, on behalf of themselves**
**and all others similarly situated,**

      **Plaintiffs,**

**vs.**

**TPUSA-FHCS, INC., (d/b/a)**
**Teleperformance USA and TPUSA, INC.,**
**(d/b/a) Teleperformance USA**

      **Defendants.**
_____/

**JOINT MOTION FOR APPROVAL OF THE COLLECTIVE ACTION**
**SETTLEMENT AND PLAINTIFFS' *UNOPPOSED* MOTION FOR APPROVAL OF**
**ATTORNEYS' FEES AND COSTS**

Named Plaintiffs Jermaine Nattoo and Rose Voltaire ("Named Plaintiffs"), on behalf of themselves and all other similarly situated individuals who previously opted-in to this action (collectively, "Plaintiffs"), and Defendants, TPUSA-FHCS, Inc. and TPUSA, Inc. (dba Teleperformance USA ("Defendants" or "TPUSA") (collectively, the "Parties") respectfully move this Court for an Order approving the collective action settlement, including payment of the settlement administrator's fee to administer the Fair Labor Standards Act ("FLSA") settlement reached between the Parties. In addition, Plaintiffs respectfully move this Court for an Order approving an award of attorneys' fees and reimbursement of litigation costs incurred pursuant to 29 U.S.C. §216(b). Defendants do not oppose Plaintiffs' request.

The Parties submit the following documents for the Court's review as part of the approval:

**Exhibit A**: Stipulation of Settlement (the "Agreement") with the following Exhibit:

Exhibit 1: Settlement Notice to Class Members.
**Exhibit B**: Declaration of Plaintiffs' Counsel Noah E. Storch.
**Exhibit C:** Proposed Order of Dismissal.

## **MEMORANDUM IN SUPPORT**

## I.      **FACTUAL AND PROCEDURAL BACKGROUND.**

A.      Summary of the Claims and Procedural History.

Named Plaintiff, Jermaine Nattoo, filed this collective action against Defendant, TPUSA-FHCS, Inc., pursuant to the Fair Labor Standards Act, 29 U.S.C. 201, et seq. ("FLSA") on June 24, 2020 (ECF No. 1) (the "Lawsuit" or the "Action").  Named Plaintiff, Rose Voltaire, filed a separate collective action against Defendant, TPUSA, Inc., pursuant to the FLSA against, Defendant, TPUSA, Inc. on August 30, 2021.  *See* Declaration of Noah Storch (hereinafter "Storch Decl.") at ¶8. On March 15, 2022, the Court consolidated Named Plaintiff Rose Voltaire's lawsuit with the Action and the case proceeded against Defendants, with Named Plaintiffs pursuing claims on behalf of themselves and other similarly situated current and former call center employees of Defendants who were employed/classified as customer service representatives and/or sales agents, or held similar job titles (hereinafter, "CSR" or "Employees").  (ECF No. 84).

In the consolidated Lawsuit, Named Plaintiffs alleged that Defendants failed to pay hourly non-exempt CSR's overtime for all hours worked in excess of 40 in a workweek in violation of the Fair Labor Standards Act,§ 201 *et seq.* ("FLSA"). Specifically, Named Plaintiffs alleged that Defendants violated the FLSA by allegedly failing to pay hourly non-exempt employees for alleged pre-shift work, including time allegedly spent locating and securing equipment each day and booting up computers and work programs.   Defendants deny these allegations and assert that it properly paid its hourly non-exempt employees, including Named Plaintiffs, for all hours worked. (Storch Decl. at ¶9).

Notice and Consent forms notice were distributed to approximately 21,000 current and former employees of Defendants.   On July 12, 2022, the opt-in period closed and approximately 930 individuals ("Opt-in Plaintiffs") returned signed consent forms and joined this lawsuit and in so doing agreed to be bound by any settled reached by Named Plaintiffs and Defendants. (Storch Decl. at ¶10).

The Parties attended a mediation conference on September 9, 2022, which resulted in an impasse.  (Storch Decl. at ¶11). The Parties continued to work together in good faith and ultimately settled the case on January 25, 2023 (ECF No. 114). (Storch Decl. at ¶12).

B.      Summary of the Settlement Terms

The Settlement Agreement is filed herewith as Exhibit A.  The Total Settlement Amount is Four Hundred Seventy-Five Thousand Dollars and Zero Cents ($475,000.00). The Total Settlement Amount is comprised of the following agreed figures: (a) the Class Members Settlement Amount in the amount of Ninety-Four Thousand Five Hundred Forty-Nine Dollars and Thirty-Two Cents ($94,549.32), which includes all individual Settlement Payments to the approximately 930 Plaintiffs; (b) General Release Payment to Named Plaintiff, Jermaine Nattoo in the amount of Seven Thousand Five-Hundred Dollars and Zero Cents ($7,500.00); (c)  General Release Payment to Named Plaintiff, Rose Voltaire, in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00); (d) Plaintiffs' Counsel's Attorneys' Fees and Litigation Costs in the amount of Three-Hundred Three Thousand Five Hundred Eighty-Seven Dollars and Zero Cents ($303,587.00); and (e) the Claims Administrator Fees and Costs in the amount of Fifty-Four Thousand Three Hundred and Sixty-Three Dollars and Sixty-Eight Cents ($54,363.68).  (Storch Decl. at ¶13).

During the course of the litigation, the Parties engaged in extensive factual investigation and formal and informal discovery relating to the claims of the Named Plaintiffs and the Opt-In Plaintiffs in the case, including interviewing witnesses, obtaining information relating to the employment and earnings of each Opt-In Plaintiff, and propounding and responding to written discovery.  The Parties have vigorously litigated this case and they have conducted extensive discovery and a thorough investigation into and evaluation of the law and facts relating to matters set forth in this Action.  (Storch Decl. at ¶14).

The Defendants have agreed to the settlement for the purpose of efficiently resolving this litigation and thereby saving further litigation expenses.  Defendants do not admit the alleged violations contained in Named Plaintiff Rose Voltaire's Amended Collective Action Complaint (ECF No. 71) pr Named Plaintiff Jermaine Nattoo's Collective Action Complaint (ECF No. 1) and maintain that they at all times acted in good faith and without knowledge of or participation in any alleged wrongdoing.  Defendants maintain that Plaintiffs were paid properly for all overtime hours worked over forty (40) per workweek under the FLSA.  The Plaintiffs have agreed to the settlement because they believe that it represents a fair, adequate and reasonable settlement of the case under all circumstances and takes into account the risks and costs of going forward with the case. (Storch Decl. at ¶15). The Claims Administrator shall calculate each Class Member's Settlement Payment based upon to the total number of weeks in which the Class Member worked as a customer service representative, sales agent or in a similar position at TPUSA's Port Saint Lucie or North Lauderdale, Florida contact centers during the Applicable Class Periods, except that any Class Member who never recorded more than 70 hours in a single pay period during the Applicable Class Periods shall be entitled to a flat payment in an amount of $5.00. Plaintiffs will receive a proportional Settlement Payment based on the total number of workweeks in the relevant time

period in which they worked for Defendants.  This type of allocation is commonly used in class and collective action settlements. (Storch Decl. at ¶16).

In exchange for the Total Settlement Amount in the Agreement, this Lawsuit will be dismissed with prejudice, and the Plaintiffs will release Defendants from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the Lawsuit.  In addition, in exchange for General Release Payments, Named Plaintiffs will provide Defendants with a general release as set forth in the Agreement. (Storch Decl. at ¶17).

## II.   APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENTS.

The Eleventh Circuit has held that FLSA claims may only be settled or compromised in one of two ways: supervision by the Secretary of Labor under 29 U.S.C. § 216(c), or court approval.  *Lynn's Food Stores, Inc. v. U.S. US Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982); see *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714 (E.D. La. 2008) (containing an extended discussion of FLSA settlements, approval, and the differences between FLSA class actions and Fed. R. Civ. P. 23 class actions).

As stated in *Lynn's Foods*, the court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  679 F.2d at 1355.  The purpose of the requirement that there be a "bona fide dispute" is to ensure that the parties are not "negotiating around the clear FLSA requirement of compensation for all hours worked, minimum wages, maximum hours, and overtime."  *Collins,* 568 F. Supp. 2d at 719.  In short, the court must find that there is "some doubt" the plaintiffs would succeed on the merits of their claims.  *Id.* However, as stated in *Lynn's Foods*, "[i]f a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that

are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Foods,* 679 F.2d at 1354.  Courts are to review FLSA settlements with a strong presumption in favor of finding a settlement fair.  *See Bonetti v. Embarq Management Co.*, 715 F.Supp.2d 1222, 1227 (M.D. Fla. 2009) ("[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

## A.     THERE EXISTS A BONA FIDE DISPUTE.

There exists a bona fide dispute in this case over several issues, including but not limited to, the computation of potential damages, the number of overtime hours worked by each of the plaintiffs, the "good faith" defenses under 29 U.S.C. §§ 259 and 260, and the "willfulness" requirement to trigger a potential third year of liability under 29 U.S.C. § 255.  The Parties believe there are bona fide disputes on all of the above issues, disputes that would have to be resolved by summary judgment or a trial on the merits.  The Parties recognize that, litigating these disputes, including the number of hours worked by the Plaintiffs, would entail substantial time, effort, and expense, and present significant risks for both Parties because of the need to examine extensive data and obtain fact-specific information from the individual Opt-In Plaintiffs. Based upon the foregoing, there are clearly "bona fide" disputes in this case.

## B.     THE SETTLEMENT IS FAIR AND REASONABLE.

The existence of a "bona fide" dispute is a significant indicator that the settlement is fair and reasonable.  The Court should further look at the "strength and nature of the claim in light of the possible defenses."  *Collins v. Sanderson Farms*, 568 F. Supp. 2d at 719 n. 6, quoting *Brask v. Heartland Automotive Svs.*, 2006 WL 2524212, at *2 (D. Minn. 2006).   However, in undertaking this analysis the court should keep in mind the policy favoring settlement as the preferred means

of resolving cases and the "strong presumption" in favor of finding a settlement to be fair. *Id.*; *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "A settlement is in large measure a reasoned choice of a certainty over a gamble, the certainty being the settlement and the gamble being the risk that comes with going to trial." *Paradise v. Wells,* 686 F. Supp. 1442, 1446 (M.D. Ala. 1988). It is not "whether the proposed [settlement] is the best possible deal," but whether it is "at a minimum, fair, adequate and reasonable." *Id*. at 720. Accordingly, the settlement represents an excellent result for all Opt-In Plaintiffs, inasmuch as it is well within the range of what each could reasonably expect to recover if they had prevailed at trial. Moreover, all or some of them could have recovered nothing if they had taken the case to trial.

Based upon the factors described herein, the Parties believe that the settlement is fair and reasonable.

Finally, while Fed. R. Civ. P. 23 does not control Rule 216(b) collective actions, in deciding whether an FLSA settlement is fair and reasonable, courts have considered the following additional factors that have been utilized in Rule 23 class actions: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members." *Collins*, 568 F. Supp. 2d at 722. The following discusses these factors starting with the sixth factor.

1.      **The Opinions of Plaintiffs' Counsel, Named Plaintiffs, and Opt-In Plaintiffs.**

a.      **Opinions of Plaintiffs' Counsel.**

For the reasons stated above, Plaintiffs' Counsel believes that the settlement is fair, adequate, and reasonable, and represents an excellent result for the Plaintiffs. The settlement

provides significant monetary relief to Opt-In Plaintiffs in light of the overtime allegedly due, and the various defenses raised by the Defendants to recovery and the amount of recovery.  (Storch Decl. at ¶18).  Based upon these factors, it is Plaintiffs' Counsel's reasoned judgment that the settlement is fair, adequate and reasonable.  *Collins*, 568 F. Supp. 2d at 727 ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

### b.    Opinion of Named Plaintiffs.

The Named Plaintiffs', having not objected to the settlement and having signed the Settlement Agreement, have shown their support for it.  They actively participated in the mediation and settlement negotiations and are fully aware of the various factors considered in the negotiation of the settlement and the arrival of the settlement amounts for each Opt-In Plaintiff and the attorney's fees and costs.  (Storch Decl. at ¶19).

### c.    Opinions of Opt-In Plaintiffs.

As observed in *Collins*, 568 F. Supp. 2d at 727-28,

> The consideration of the "opinions of absent class members" is one that perhaps reflects the starkest difference between class actions under Rule 23 and collective actions pursuant to § 216(b), that is, the requirement that class members affirmatively give their consent to join in the latter. All the present plaintiffs to this collective action have agreed to join in this lawsuit and be represented by the named plaintiffs' counsel. [footnote omitted.]

If the Court approves this settlement, the Opt-In Plaintiffs, who already joined this Action and in so doing agreed to be bound by any settlement reached by Named Plaintiffs and Defendants, will each receive a Notice informing them of the settlement, the claims the Class Member is releasing by participating in the settlement and how their payment was calculated.  *See* Exhibit 1 attached to Settlement Agreement.   (Storch Decl. at ¶20).

**2.      The Existence of Collusion Behind the Settlement.**

There are no allegations of collusion or collusion behind this settlement.  The Parties negotiated the settlement terms and spent many hours revising and exchanging drafts of settlement documents to reach an arm's length settlement.  (Storch Decl. at ¶21).  The proposed settlement is the product of vigorous litigation and extensive negotiation.

**3.      The Complexity, Expense, and Likely Duration of the Litigation.**

The case presents complex legal and factual issues.  If the case were to be fully litigated, discovery would result in substantial additional time and expense in further litigation of the case beyond that already incurred.  Summary judgment proceedings, a decertification motion, a trial on the merits of issues not resolved at summary judgment, and potential subsequent hearings and/or separate proceedings on damages would have been lengthy, time consuming, and expensive, given the size of the collective and the vigorous defense mounted so far by the Defendants, and would likely result in protracted appellate proceedings lasting many, many years. *(*Storch Decl. at ¶22).

The Settlement, on the other hand, provides substantial relief to the Plaintiffs promptly and efficiently.

**4.      The Stage of the Proceedings and Amount of Discovery Completed.**

At the time of the settlement, the case was in a relatively advanced stage.  During the course of the litigation, the parties engaged in extensive factual investigation and formal and informal discovery of the Plaintiffs' claims, including interviewing witnesses, depositions, obtaining information relating to the employment and earnings of each Opt-In Plaintiff, and propounding and responding to written discovery.  The Parties have vigorously litigated this case and they have conducted extensive discovery and a thorough investigation into and evaluation of the law and facts relating to matters set forth in this action.  (Storch Decl. at ¶23).   Defendants produced over

one thousand pages of documents in response to Plaintiffs' document requests, including corporate policies, training materials, work schedules, payroll records, personnel files, reports, and memoranda, as well responses to Requests for Admissions and Interrogatories. (Storch Decl. at ¶24). Similarly, Plaintiffs also responded to document requests for Plaintiff and those Opt-in Plaintiffs who joined the Action prior to the Court's Order conditionally certifying the case as a collective action. (Storch Decl. at ¶25). In addition, Plaintiffs' counsel interviewed dozens of Opt-In Plaintiffs regarding their pre-shift work, including time allegedly spent locating and securing equipment each day and booting up computers and work programs and hours worked. As the Court is aware, this case has been pending for close to three (3) years. (Storch Decl. at ¶26).

The stage of the proceedings demonstrates that the settlement is based upon an adequate investigation and evaluation of the relative strengths and weaknesses of both parties' cases.

### 5. The Range of Possible Recovery.

Plaintiffs' counsel believes that the settlement in this case is well within the range of possible recovery and states that the settlement amounts represent payment of a reasonable approximation of the overtime hours that the Opt-In Plaintiffs worked, based on a time and half-time method of calculating overtime pay, plus an equal amount of liquidated damages. (Storch Decl. at ¶27). The settlement also reflects an appropriate discount for anticipated challenges in establishing liability and damages, such as the possibility and the uncertainty associated with proving the Defendants' alleged "willfulness" as required by 29 U.S.C. § 260. Accordingly, Plaintiffs' counsel believes that the settlement represents an excellent result for all Opt-In Plaintiffs, particularly considering that they could have recovered nothing.

### 6. The Probability of the Plaintiffs' Success on the Merits.

In entering into the settlement, the Plaintiffs and their counsel have considered the likelihood of success at trial.  While the Plaintiffs believe there was a likelihood of success on the issue of whether the Plaintiffs were paid for all overtime hours worked under the provisions of the FLSA, Defendants vigorously dispute the issue of liability and believe they have strong evidence showing they paid all Plaintiffs for all hours worked over forty (40) in all workweeks during their employment, which would be further developed through additional discovery.  Defendants also believe that discovery of the Plaintiffs would show numerous individual issues supporting decertification of the collective action, which applies a much higher standard than the conditional certification stage.  There are also substantial disputes relating to the number of overtime hours worked by the Plaintiffs, the limitations period, and whether the Plaintiffs could recover liquidated damages and prove "willfulness."  These issues pose significant obstacles to ultimate success and the amount of recovery that could be obtained.  Therefore, the settlement is in the best interest of the Plaintiffs and is fair and reasonable. *(*Storch Decl. at ¶28).

## III.    THE ATTORNEY'S FEES AND COSTS PAID TO PLAINTIFFS' COUNSEL.

The Settlement Agreement provides that Plaintiffs' counsel will receive $303,587.00 in payment of attorney's fees and costs, excluding the costs of administration of the settlement.  These amounts were negotiated separately from those amounts proposed to be paid to the Plaintiffs and Opt-In Plaintiffs.  Plaintiffs' Counsel asserts that these amounts are fair and reasonable, given the fees and costs incurred in this matter, the Defendants' vigorous defense, and the excellent results obtained on behalf of Plaintiffs and the Opt-In Plaintiffs. Plaintiffs' Counsel also asserts that he  is highly experienced in wage and hour collective actions and has extensive experience litigating FLSA collective actions.  (Storch Decl. at ¶29).

As stated in *Vogenberger v. ATC Fitness Cape Coral, LLC*, Case No. 2:14-cv-436-FtM-29CM, 2015 WL 1883537, at *4, (M.D. Fla., Order of April 15, 2015), in an FLSA case, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." 2015 WL 1883537, at *5 (finding the requested fees reasonable "upon consideration of the time and effort spent by Plaintiffs' counsel, his experience litigating FLSA collective actions, as represented by the parties, and the time and effort by Plaintiffs' counsel that still will be necessary to effectuate the settlement"); *see also King v. My Online Neighborhood, Inc.*, No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007). The Named Plaintiffs actively participated in negotiation of the settlement, including separate negotiation of the attorney's fees and costs. The attorney's fees and costs are reasonable in light of the extensive time spent by Plaintiffs' Counsel litigating this case and obtaining an excellent result for the Plaintiffs. (Storch Decl. at ¶30).

## IV.   CONCLUSION

Based upon the foregoing, the Parties request that the Court enter an order approving the settlement agreement proposed by the Parties, including the settlement amounts to the Plaintiffs, Plaintiffs' attorney's fees and costs, and all other terms of the Parties' Settlement Agreement, and dismiss this Action with prejudice. Additionally, pursuant to S.D. Fla. L.R. 7.1(a)(2), a proposed order granting the Motion is attached as Exhibit C.

Dated this 10th day of March, 2023

*/s/ Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No. 85476
Richard Celler Legal, P.A.
10368 West State Road 84, Suite 103
Davie, FL 33324
Telephone: (866) 344-9243
Email: **noah@floridaovertimelawyer.com**

*/s/ Sarah J. Lis*
Sarah J. Lis, Esq.
Florida Bar No. 70747
AKERMAN LLP
201 E. Las Olas Blvd., Suite 1800
Ft. Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile:  (954) 463-2224

Email: **sarah.lis@akerman.com**

*Attorney for Plaintiffs*

and

Eric A. Gordon, Esq.
Florida Bar No. 071341
Melissa S. Zinkil, Esq.
Florida Bar No. 0653713
AKERMAN LLP
777 South Flagler Drive,
Suite 1100, West Tower
West Palm Beach, FL  33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313
Email: **eric.gordon@akerman.com**
Email: **melissa.zinkil@akerman.com**

*Attorneys for Defendants*

69173206;1